may be made. I can see no advantage to any subsequent claimant by a paying of the amount into the treasury of the United States. This court could compel no security from the government, and, if the property once passed from its control, the claimant would be forced to seek his rights in another court by a new suit, while, if left in control of this court, a simple order made herein would be sufficient.

It has been suggested as a prudential reason for making a change in the practice of this court in this matter, irrespective of the law, that it would remove the temptation that now exists to erase and obliterate marks and conceal facts and circumstances of finding by which a claimant might be discovered. On the other hand, it was, I believe, one reason assigned by Judge Marvin at the time he established the rule in accordance with the then existing practice, that such would tend to remove the temptation to conceal and convert to their own use many articles found derelict, which, if reported, might be claimed and returned to their owner. As prudential reasons, each of these has its weight; but it is not for me to decide what the law should be. That belongs to the legislative department. It is impossible to remove all temptations for avarice to commit crime, and this court, believing that it has a right of protecting absent owners in all cases of shipwrecked goods found derelict in this district, and will endeavor so to use that right, in either case avarice will learn that the safest way is to avoid crime, and not readily yield to slight temptations. Should the law of England prevail in this case here is a question whether, being wreck maris, or wreck of the sea, the state laws should not control, as there the proceeds would not go to the sovereign. but to the lord of the manor. and were held to be beyond the admiralty jurisdiction.

I have thus at length reviewed the question under consideration with attendant questions arising by the way at a far greater length than I had at first contemplated, and have embodied much that might by some be considered but ill befitting a judicial opinion, but in arriving at my conclusion I have examined carefully both sides of the question, and quoted largely, rather reviewing the whole question than confining myself to my opinion on it. Finally, I would hereby state the conclusion I have arrived at.

First. That the United States has not, by any positive enactment or regulation, claimed the proceeds of derelict.

Second. That the prerogative rights or national droits of the English sovereignty have not been succeeded to by the United States by rights of succession merely.

Third. The admiralty rules, regulations. and laws of England are only binding upon the admiralty courts of this country so far as they are in unison and harmony with the maritime law of all nations, and in none of their local municipal features.

Fourth. That the only principle in the maritime law in regard to estrays of the sea or derelicts common to civilized nations, or binding as such, is that the sovereign power shall protect the persons and property of all who may have suffered shipwreck, and see that they have a fair opportunity to claim and obtain the same.

Further than this, the usages and customs are diverse, local, and municipal, and not binding as a portion of the maritime law of nations. That a certain time is sufficient to warrant the presumption of abandonment, and that time has been fixed at a year and a day. That after that it is within the power of the sovereign to grant the natural rights of occupants to the finder or claim the property, but such natural rights cannot be overcome but by positive law.

The court will in its judicial capacity protect in every way possible absent owners, and does not consider it binding to make any order at the lapse of a year and a day if sufficient notice has not been given, or there is a probability of a claim being filed; and although by the rule of the court the residue may be paid the finder, it is within the option of the court, and not obligatory.

I may be wrong in these conclusions, or any of them upon which this question depends. It affords me satisfaction to know that there are higher tribunals who may correct any error 1 may have made. The prayer of the motion must be denied.

Upon appeal to the circuit court, judgment was given for appellees by Justice Woods without opinion.

---

RUSSELL (FRAYSER v.). See Case No. 5,067.

RUSSELL (GRAY v.). See Case No. 5,728.

---

## Case No. 12,155.
### RUSSELL v. GREGORY.

[Nowhere reported; opinion not now accessible.]

---

RUSSELL (HALL v.). See Case No. 5,943.

RUSSELL (HAMILTON v.). See Case No. 5,989.

---

## Case No. 12,156.
### RUSSELL v. HOWARD et al.

[2 McLean, 489.] [1]

Circuit Court, D. Illinois. June Term, 1841.

MORTGAGES—JUNIOR MORTGAGEE—EQUITABLE RELIEF.

1. A mortgagee has a right to pay off prior incumbrancers, and be substituted to their rights.

[Cited in Kittering v. Parker. 8 Ind. 53, note 1.]

2. Where two persons have liens on the same property for different debts, and one of them

---

[1] [Reported by Hon. John McLean, Circuit Justice.]